

FILED & ENTERED

DEC 20 2022

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gonzalez DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA—LOS ANGELES DIVISION

| | |
|---|---|
| In re:    Josefina Lopez,<br>           Debtor. | Case No.: 2:21-bk-16378-ER<br><br>Chapter:  7<br><br>**MEMORANDUM OF DECISION DENYING MOTION FOR AN ORDER FINDING THAT THE DEBTOR'S DEFENSIVE APPELLATE RIGHTS ARE NOT PROPERTY OF THE ESTATE OR, IN THE ALTERNATIVE, FOR AN ORDER COMPELLING THE CHAPTER 7 TRUSTEE TO ABANDON THE DEBTOR'S DEFENSIVE APPELLATE RIGHTS**<br><br><br>Date:        November 16, 2022<br>Time:       10:00 a.m.<br>Location:  Courtroom 1568<br>              Roybal Federal Building<br>              255 East Temple Street<br>              Los Angeles, CA 90012 |

At the above-captioned date and time, the Court conducted a hearing[1] on the *Amended Debtor's and Insurer's Motion for an Order Compelling Abandonment of Debtor's and Insurer's Appellate Rights in State Court Proceeding to the Debtor and Insurer and to Permit Appeal of Personal Injury Judgment* [Doc. No. 75] (the "Motion"). For the reasons set forth below, the Motion is **DENIED**.[2]

---

[1] A transcript of the hearing is available as Doc. No. 87 and is cited as "Hrg. Tr."

[2] The Court considered the following pleadings in adjudicating the Motion:

## I. Facts and Summary of Pleadings

### A. Background

On August 11, 2021 (the "Petition Date"), Josefina Lopez (the "Debtor") filed a voluntary Chapter 7 petition. Eric Bejar and Christina Bejar (the "Bejars") are the Debtor's largest creditors. The Bejars' claim against the estate arises from a vehicular accident between the Debtor's car and a motorcycle ridden by patrolman Eric Bejar. On September 18, 2017, the Bejars filed a personal injury action against the Debtor in the Los Angeles Superior Court (the "State Court Action").

On March 22, 2021—approximately five months prior to the Petition Date—the Debtor received $62,500 from her insurer, Victoria Fire & Casualty Company (the "Insurer"), in exchange for agreeing not to pursue against the Insurer a claim for bad-faith failure to settle within policy limits (the "Bad Faith Claim"). The agreement between the Debtor and the Insurer was memorialized in a *Confidential Settlement Agreement and Release* (the "Prepetition Settlement Agreement").[3] Among other things, the Prepetition Settlement Agreement states that the Debtor "hereby represents to the Insurer, as a material term of this Agreement, that she intends to file for personal bankruptcy to include the [State Court Action] as a claim to be discharged."[4]

On August 25, 2021, upon the motion of the Bejars (the "RFS Motion"),[5] the Court lifted the automatic stay to permit the Bejars to proceed to trial in the State Court Action.[6] The Court also approved a stipulation between the Bejars and the Chapter 7 Trustee (the "Trustee") specifying the scope of stay relief (the "RFS Stipulation").[7] In the RFS Stipulation, the Bejars agreed that any judgment that they obtained against the Debtor would be enforced only against the Insurer, unless the Debtor's case was dismissed or the Bejars' claims were determined to be non-dischargeable.

---

1) Amended Debtor's and Insurer's Motion for an Order Compelling Abandonment of Debtor's and Insurer's Appellate Rights in State Court Proceeding to the Debtor and Insurer and to Permit Appeal of Personal Injury Judgment [Doc. No. 75] (the "Motion");

2) Chapter 7 Trustee's Opposition to Amended Debtor's and Insurer's Motion for an Order Compelling Abandonment of Debtor's and Insurer's Appellate Rights in State Court Proceeding to the Debtor and Insurer and to Permit Appeal of Personal Injury Judgment [Doc. No. 81];

3) Opposition to Amended Debtor's and Insurer's Motion for an Order Compelling Abandonment of Debtor's and Insurer's Appellate Rights in State Court Proceeding to the Debtor and Insurer and to Permit Appeal of Personal Injury Judgment [Doc. No. 80]; and

4) Debtor's and Insurer's Consolidated Reply in Support of Their Amended Motion for an Order Compelling Abandonment of Debtor's and Insurer's Appellate Rights in State Court Proceeding to the Debtor and Insurer and to Permit Appeal of Personal Injury Judgment [Doc. No. 81].

[3] Doc. No. 80, Ex. A.
[4] Prepetition Settlement Agreement at § 5.7.
[5] Doc. No. 7.
[6] Doc. No. 19.
[7] Doc. No. 17 (RFS Stipulation) and Doc. No. 20 (order approving RFS Stipulation).

The State Court Action was tried before a jury during the month of September 2021. On November 16, 2021, the State Court entered judgment against the Debtor, and in favor of the Bejars, in the amount of approximately $61 million (the "State Court Judgment"). On December 14, 2021, the Bejars filed a Proof of Claim on account of the State Court Judgment. The claims bar date in this case was January 10, 2022.[8] The Bejars are the only creditors who have timely filed a Proof of Claim.

On November 22, 2021, the Debtor received a discharge.[9] No timely complaint seeking to except the State Court Judgment from the Debtor's discharge has been filed. Therefore, the Debtor's liability in connection with the State Court Judgment has been discharged.

On February 17, 2022, the Court granted the Trustee's application to employ the Law Offices of Bradley E. Brook (the "Brook Firm") as his special litigation co-counsel, for the purpose of prosecuting litigation against the Insurer for the benefit of the estate.[10] No parties—including the Insurer—objected to the Brook Firm's employment as special litigation co-counsel. However, the Insurer *did* object to the Trustee's application to employ the Brook Firm as his general bankruptcy counsel. A hearing on the Brook Firm's employment as the Trustee's general bankruptcy counsel took place on February 16, 2022. The Trustee appeared at the hearing and agreed to submit on the Court's tentative ruling, which was to deny the application to permit the Brook Firm to serve as the Trustee's general bankruptcy counsel. In its tentative ruling, the Court reasoned that the Brook Firm had previously represented the Bejars in connection with the RFS Motion, and that such representation had played a material role in enabling the Bejars to obtain the State Court Judgment, the largest and only claim against the estate. Accordingly, the Court concluded that the Brook Firm held an "interest adverse to the estate" and was therefore barred from serving as the Trustee's general bankruptcy counsel. At the request of the Brook Firm, in lieu of entering an order denying the employment application, the Court permitted the Trustee to withdraw the employment application.[11]

On February 23, 2022, the Court granted the Trustee's application to employ the Parris Law Firm (the "Parris Firm") as his special litigation co-counsel, also for the purpose of prosecuting litigation against the Insurer for the benefit of the estate.[12] No parties—including the Insurer—objected to the Parris Firm's employment as special litigation co-counsel.

The Trustee has not commenced any litigation against the Insurer before the Bankruptcy Court. The Trustee has indicated that he may pursue an action against the Insurer to set aside the Prepetition Settlement Agreement as a fraudulent transfer. The theory of any such action would be that the Bad Faith Claim is potentially worth up to the amount awarded to the Bejars (approximately $61 million), and that accordingly the settlement of the Bad Faith Claim for only $62,500 is avoidable.

On March 7, 2022 and June 27, 2022, the Insurer caused appeals of the State Court Judgment to be filed in the Debtor's name (collectively, the "Appeals"). (The appeal filed in March 2022 is of the State Court Judgment itself; the appeal filed in June 2022 is of the costs incurred by the Bejars.) The Insurer did not contact the Trustee before filing the March 7, 2022 appeal.[13] The

---

[8] Doc. No. 33.

[9] Doc. No. 38.

[10] Doc. No. 60.

[11] Audio Recording of February 17, 2022 Hearing (on file with the Clerk of the Court).

[12] Doc. No. 65.

[13] Declaration of Howard M. Ehrenberg [Doc. No. 81] (the "Ehrenberg Decl.") at ¶ 10.

Insurer did not ask the Trustee to authorize or ratify the filing of the March 7, 2022 appeal, and the Trustee has not authorized or ratified the filing of that appeal.[14] In May 2022, the Insurer's counsel contacted the Trustee to inquire whether he had any objections to the March 7, 2022 appeal going forward. The Trustee stated that he had no objection to the appeal going forward; however, the Trustee did *not* advise the Insurer that he either authorized or ratified the March 7, 2022 appeal.[15]

On September 20, 2022, the State Appellate Court issued orders stating that it was considering dismissing the Appeals as having been filed by a party without standing to do so.[16] The State Appellate Court reasoned that as a result of the Debtor's bankruptcy petition, the Trustee was the party with standing to appeal the State Court Judgment, but that it had been the Debtor, not the Trustee, who had filed the Appeals. The State Appellate Court provided the Trustee the opportunity to file briefing addressing whether the Debtor lacked standing to file the Appeals and whether the Appeals should be dismissed.

In response to the State Appellate Court's orders, the Trustee took the position that the Debtor lacked standing to file the Appeals when she filed them.[17] The Trustee further noted that under the threat of denial of coverage, the Insurer had demanded that the Trustee request that the State Appellate Court refrain from dismissing the Appeals until the Insurer could file a motion seeking to substitute the Trustee as the Appellant.[18] The Trustee expressed no opinion as to whether it was appropriate for him to be substituted as the Appellant.[19] Finally, the Trustee stated that he had never abandoned the Appeals.[20]

## B. Summary of Papers Filed in Connection with the Motion

The Debtor and the Insurer (collectively, the "Movants") seek a determination that the Appeals are *not* property of the Debtor's estate. Movants argue that the Appeals are not estate property because the liability arising in connection with the State Court Judgment is a debt, and a debt is not property. Movants further argue that the Appeals cannot be estate property because the right to appeal did not arise until after the Petition Date. Finally, Movants assert that the Trustee is conflicted with respect to the Appeals because he has employed the Parris Firm, which represented the Bejars in the State Court Action, as his special litigation co-counsel.

To the extent that the Court determines that the Appeals are estate property, Movants seek an order compelling the Trustee to abandon the Appeals to the Debtor so that the Appeals can be pursued. Movants note that when the Insurer contacted the Trustee and asked if he objected to the Debtor's filing of the Appeals, the Trustee stated that he had no objection. According to Movants, the Trustee did not object to the Debtor's pursuit of the Appeals until the State Appellate Court raised the issue of the Debtor's standing. Movants assert that it would be inequitable to allow the Trustee to change his position in this manner to their detriment.

The Trustee opposes the Motion. He argues that the Appeals are property of the estate pursuant to *Mozer v. Goldman (In re Mozer)*, 302 B.R. 892 (C.D. Cal. 2003), a case in which the

---

[14] Ehrenberg Decl. at ¶ 11.
[15] Ehrenberg Decl. at ¶ 14.
[16] Doc. No. 75, Exs. F and G.
[17] Doc. No. 81, Ex. 3 at pp. 1–4.
[18] *Id.* at p. 1.
[19] *Id.*
[20] *Id.* at pp. 4–5.

court found that the debtors' rights to file an appeal defending against a judgment entered against them was estate property that could be sold by the Chapter 7 Trustee. The Trustee states that he is contemplating selling the estate's rights in the Appeals. He further argues that such rights have material value to the estate and are not burdensome to administer, and that accordingly Movants' request to compel him to abandon the Appeals should be denied.

The Bejars also oppose the Motion. They contend that the Debtor lacks standing to bring the Motion, and that the relief sought by way of the Motion is available only through an adversary proceeding, since the Motion seeks to determine an interest in property.

In their Reply, Movants argue that the Trustee's reliance on *In re Mozer* is misplaced because the Debtor's right to appeal did not arise until after the Petition Date. According to Movants, this means that the Appeals do not constitute estate property because the estate includes only property that existed "as of the commencement of the case," § 541(a).

## II. Findings of Fact and Conclusions of Law

At the outset, the Court finds it appropriate to emphasize that there are only two questions at issue in connection with the Motion: whether the Appeals are property of the estate and if so, whether the Trustee should be compelled to abandon the Appeals. The parties have devoted substantial space in their papers to matters that go far afield of these issues. For example, the question of whether the Trustee's conduct with respect to the Appeals has breached the cooperation clause in the Debtor's insurance policy (the "Policy")[21] is not relevant to the issues presented by the Motion, and will not be addressed by the Court. The Insurer's allegations that the Trustee is conflicted by virtue of the fact that the Brook Firm and the Parris Firm have been employed as his special litigation counsel is likewise not relevant to the Motion. The Court notes that the Insurer could have objected to the employment of these firms, but did not do so.

Having clarified what is and what is not at issue in connection with the Motion, the Court now turns to the merits. Addressing the first issue, the Court finds that the Appeals *are* property of the estate. The case of *Mozer v. Goldman (In re Mozer)*, 302 B.R. 892 (C.D. Cal. 2003) is directly on point. In *Mozer*, the debtors filed a Chapter 7 petition after a substantial judgment was entered against them. The Chapter 7 Trustee sought authorization to sell the debtors' right to defend against an appeal of the judgment. In opposition to the sale, the debtors made the exact argument that Movants make here—that the debtors' right to defend against the appeal was not estate property because the judgment was a liability, not an asset.

The *Mozer* court overruled the debtors' opposition to the sale of the debtors' defensive appellate rights. Noting that "rights created or granted by statute" constitute property under California law, the *Mozer* court concluded:

> The right to appeal is valuable in nature and is the property of the bankruptcy estate under California's broad concept of property rights. Therefore, all of the Debtors' appellate rights, including the Defensive Appellate Rights, are saleable by the Trustee. The Defensive Appellate Rights arising from a judgment against the Debtor are not qualitatively different with respect to their status as property than appellate rights arising //

---

[21] Doc. No. 83, Ex. C.

from a judgment on the Debtors' claims. The Debtors are unable to cite to any California or Federal authority in support of their position.

*Mozer*, 302 B.R. 892, 896 (C.D. Cal. 2003)

Just as was the case in *Mozer*, the Appeals here involve a judgment entered against the Debtor. Therefore, *Mozer*'s holding applies with equal force to the instant case.

Movants attempts to distinguish *Mozer* by arguing that in this case, the Debtor's right to defend against the Appeals did not arise until subsequent to the Petition Date. According to Movants, this means that the rights in the Appeals are *not* property of the estate. This is a distinction without a difference. When the Debtor sought bankruptcy protection, the Trustee succeeded to all the Debtor's rights in the State Court Action—including the Debtor's right to defend against any adverse judgment that might be subsequently entered against her. Because the claims asserted against the Debtor in the State Court Action accrued prior to the Petition Date, the fact that the Debtor did not acquire the right to defend against the appeal of the State Court Judgment until after the Petition Date does *not* divest the estate of ownership of the Debtor's defensive appellate rights. As was the case in *Mozer*, such defensive appellate rights are "valuable in nature" and are "property of the bankruptcy estate under California's broad concept of property rights," *Mozer*, 302 B.R. at 896. Indeed, the Trustee has represented that he is considering selling the Debtor's defensive appellate rights.

The Insurer argues that *Mozer* does not apply because specific terms within the Policy limit the rights that passed to the Trustee when the Debtor sought bankruptcy protection. However, the Insurer has not identified any specific provision within the Policy that would defeat *Mozer*'s holding that the Appeals are estate property.

At oral argument, the Insurer identified two provisions in the Policy as relevant to the issue of whether the Appeals constitute estate property. The first, a provision requiring the Debtor to cooperate with the Insurer, provides in relevant part: "In the event of an accident or loss a person seeking coverage must [c]ooperate fully with us and assist us in the investigation of, or any matter concerning a claim or lawsuit, and at our request, attend hearings and/or trials and assist in making settlements, in securing and giving evidence, in obtaining the attendance of witnesses and in the conduct of suits."[22] The second, a provision pertaining to appeals, provides in relevant part: "For any claim or notice of loss we may do any of the following…. If we lose a lawsuit for which we are providing a defense, we will pay the cost of any appeal we determine is necessary, including interest and the cost of any bond."[23]

According to the Insurer, these two provisions, read together, mean that the Insurer has the rights (1) to determine whether to bring the Appeals and (2) to control the Appeals once brought.[24] The Insurer's position is that these rights cannot be vindicated unless the Court determines either (1) that the Appeals are not estate property or (2) compels the Trustee to abandon the estate's interest in the Appeals. The Insurer characterizes the Trustee's argument to the State Appellate Court that the Debtor lacked standing to file the Appeals as an attempt to assert control over the Appeals that, if given effect, would provide the Trustee greater rights under the Policy than the Debtor ever possessed.[25]

---

[22] Policy [Doc. No. 83, Ex. C] at Part B(3).

[23] *Id.* at Part C(4).

[24] Hrg. Tr. [Doc. No. 87] at 26:23–28:19.

[25] *Id.* at 6:8–22.

The Insurer's argument rests upon a mistaken premise. At the time the Appeals were filed, the Insurer could have sought authorization from the Trustee to file the Appeals in the estate's name. Had the Insurer done so and the Trustee refused, an argument could be made that such refusal would have violated the Policy's cooperation clause. But that is not what occurred. The Insurer did *not* seek authorization from the Trustee to file the Appeals in the estate's name. Instead, the Insurer elected to unilaterally file the March 7, 2022 appeal without even contacting the Trustee. Had the Insurer proceeded properly by either seeking the Trustee's permission to file the March 7, 2022 appeal in the estate's name, or at the very least seeking the Trustee's authorization to file the appeal, its right to determine whether to bring that appeal would have been vindicated. The situation in which the Insurer now finds itself results not from overreach by the Trustee, but rather from the Insurer's failure to proceed properly with respect to the March 7, 2022 appeal. Accordingly, there is no merit to the contention that provisions in the Policy pertaining to appeals and to the Debtor's duty to cooperate prevent the Appeals from becoming estate property.

Having found that the Appeals *are* property of the estate, the Court next turns to the question of whether the Trustee should be compelled to abandon the estate's interest in the Appeals. Under § 554(b), an interested party may move for an order compelling the Trustee "to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." "An order compelling abandonment is the exception, not the rule. Abandonment should only be compelled in order to help the creditors by assuring some benefit in the administration of each asset.... Absent an attempt by the trustee to churn property worthless to the estate just to increase fees, abandonment should rarely be ordered." *Vu v. Kendall (In re Viet Vu)*, 245 B.R. 644, 647 (B.A.P. 9th Cir. 2000) (internal citation omitted).

Here, the estate's interest in the Appeals is not burdensome to administer, and such interest likely has substantial value. For example, the Insurer could achieve the objectives that it seeks to achieve through the instant Motion by purchasing the estate's interest in the Appeals from the Trustee. Movants have failed to demonstrate that an order compelling the abandonment of the Appeals is necessary or appropriate.

Movants argue that the equities of the case require abandonment so that the Debtor can pursue the Appeals. This identical argument was rejected in *Mozer*. As explained by the *Mozer* court:

> The Debtors argue that the Sale Orders deprive the Debtors of both their appellate rights in state court and also deprive Mozer of her right to a trial in an adversary proceeding. The Debtors assert that this deprivation violates the Fifth and Fourteenth Amendments. The Debtors argue that their fundamental rights, particularly the right to a fair trial, were violated by the rendering of the state court judgment against the Debtors.
>
> The Court has held that the appellate rights, including the Defensive Appellate Rights, are property that can be sold by the Trustees. Clearly, the Debtors had the constitutional right not to be deprived of property without due process. However, the Debtors lost the rights to the property through the process of filing for Chapter 7 relief, thereby passing all pre-petition property into the bankruptcy estate. Loss of property through the Chapter 7 process is not a deprivation of property without due process. Further, despite the Debtors' contentions that they did not have the capital resources to

//

compete with the four non-bankrupt entities participating in the bidding, the Debtors did have the opportunity to secure means to bid for these rights and chose not to do so.

*Mozer*, 302 B.R. 892, 897 (C.D. Cal. 2003).

Movants' argument that the estate has been divested of its interest in the Appeals because the Court lifted the automatic stay to enable the State Court Action to proceed likewise misses the mark. As the Ninth Circuit has explained:

> When a bankruptcy court lifts, or modifies, the automatic stay, it merely removes or modifies the injunction prohibiting collection actions against the debtor or the debtor's property. Although the property may pass from the control of the estate, that does not mean that the estate's interest in the property is extinguished. 'Relief from an automatic stay entitles the creditor to realize its security interest ... in the property, but all proceeds in excess of the creditor's interest must be returned to the trustee.' Thus, an order lifting the automatic stay by itself does not release the estate's interest in the property and 'the act of lifting the automatic stay is not analogous to an abandonment of the property.'"

*Catalano v. Comm'r*, 279 F.3d 682, 686–87 (9th Cir. 2002) (internal quotations and citations omitted).

The only thing that the Court did when it approved the RFS Stipulation and entered the order lifting the automatic stay (the "RFS Order") was to permit the State Court Action to proceed to final judgment. The RFS Order made no findings regarding whether the Appeals constitute estate property, either explicitly or implicitly. In fact, no such findings could have been made; at the time the RFS Order was entered, the Appeals had not even been filed.

## III. Conclusion

Based upon the foregoing, the Motion is **DENIED**. The Court will enter an order consistent with this Memorandum of Decision.

###

Date: December 20, 2022

Ernest M. Robles
United States Bankruptcy Judge